AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| United States of America | ) |
| v. | ) |
| | ) Case No: 19 mj 1504 |
| Hector CRESPO JR | ) |
| | ) |
| _Defendant(s)_ | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of June 09, 2019 in the county of Grant in the State and District of New Mexico, the defendant violated 8 U.S.C. §1324(a)(1)(A)(ii)(Transporting), an offense described as follows:

knowing or in reckless disregard of the fact that Material Witness One and Material Witness Two, had come to, entered, or remained in the United States in violation of law, transport, or move or attempt to transport or move such aliens within the United States by means of transportation or otherwise, in furtherance of such violation of law.

This criminal complaint is based on these facts:
On 06/09/2019, Border Patrol Agent One, was assigned to Zone 42 of the Lordsburg area of responsibility (AOR) in K44835. As he was approaching his assigned zone, two Border Patrol Agents affected an arrest south of his location. They headed north to the Lordsburg Station, leaving the border area unpatrolled. Agent One decided that he would remain on New Mexico Highway 146 to conduct highway interdiction. Highway 146 is a north/south road leading from the border area to I-10 that allows vehicles to circumvent established checkpoints. At 2:10 pm, Agent One was parked perpendicular to NM Highway 146 near the 3-mile marker. A grey sport utility vehicle (SUV) passed his location heading north with multiple occupants.

☒ Continued on the attached sheet.

_Complainant's signature_

Wendell Hayes, Agent
_Printed name and title_

Sworn to before me and signed in my presence.

Date: June 11, 2019

_Judge's signature_

City and state: Las Cruces, N.M.

KEVIN R. SWEAZEA
U.S. MAGISTRATE JUDGE
_Printed name and title_

CONTINUATION OF CRIMINAL COMPLAINT

## STATE AND DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

V.

Hector CRESPO JR

**Continuation of Statement of Facts:**
Agent One was able to observe that two adults occupied the front seats and what appeared to be multiple adults in the back seat and the third row seat of the vehicle. This made him suspicious because most vehicles are occupied by families, parents and children, and seldom by that many adults in the third row seating due to the limited space. Agent One decided to investigate further. Agent One pulled onto the highway and began to follow. He observed that the vehicle had an out of state license plate, which is consistent current smuggling trends. He also observed the driver look into his left and right rearview mirrors by the silhouette of his baseball hat. As Agent One moved to the left and right, trying to avoid the glare of the sun reflecting off the back of the SUV to observe the occupants, in the northbound lane the driver watched Agent One's position in relation to his. This also did not seem normal, because the highway is a long, straight and remote area, normally patrolled by Border Patrol and drivers familiar with the area would know that Border Patrol does not stop vehicles for speeding, so it was suspicious that he appeared to be watching Agent One. Agent One requested record checks from sector radio. Vehicle registration returned as being owned by PV Holding Corporation, indicating that the vehicle was a rental due to previous trends. Human smugglers routinely use rental vehicles because they know that if caught the Border Patrol will seize their personal vehicles. The stolen vehicle check and 72-hour lane check returned as negative. This also made me suspicious because the vehicle did not seem from the area, and if it didn't go to visit Mexico, why was it there? Very few ranchers and some citizens that are retired populate this area. It is not normal for somebody to visit the border area without crossing into Mexico. There is no tourist destinations on the American side of the international border in the Lordsburg AOR. Agent One activated the government vehicle's emergency equipment to initiate the vehicle stop. The vehicle stopped at 2:15 pm at the 9-mile maker. As the Agent approached the Volkswagen Atlas SUV, he identified himself as a U.S. Border Patrol Agent to all present. The Agent observed in the vehicle a driver, front seat passenger, three subjects in the back seat and two in the third row seat. Agent One ordered the driver of the vehicle, later identified as CRESPO, Hector Jr., to roll down all the windows. Agent One noticed the rear driver side passenger wearing a torn and soiled camouflage long sleeve shirt, consistent with clothing worn by illegal immigrants crossing the border by foot. He asked for identification from everyone in the vehicle. The rear seat passengers indicated that they did not speak English. CRESPO, Hector Jr., and the front seat passenger, later identified as, CASTILLO, Joseph M., handed me their identification. Agent One asked CRESPO and CASTILLO where they were going and where they were coming from. They stated that they were coming from Deming, New Mexico and going back to Deming. They said that they had gone down to Janos, Mexico to go to a brothel. Agent One went back to his assigned vehicle to get a records check on CRESPO. Due to the negative 72 hour lane check, Agent One knew that they had not crossed into Mexico and were lying. Due to the number of subjects present, and the fact that many human smuggling loads have recently included firearms, the Agent decided to separate the driver and front seat passenger from the vehicle and place them under an investigative detention while he controlled the other subjects and conducted an immigration inspection on them. The driver and front seat passenger were placed in Agent One's vehicle and the assigned government vehicle of BPA Two while the Agents concluded the immigration inspection on all the remaining subjects. They stated that they were Mexican nationals without the proper documents to be in, travel through or reside in the United States. All subjects were placed under arrest at approximately 2:20pm. Agent Two told Agent One that the subject in his vehicle, identified as CASTILLO, stated to him that a weapon was in his backpack on the front passenger floorboard of the vehicle. While searching the vehicle for the weapon, Agent One encountered a backpack, grey in color on the front passenger floorboard. He opened it and found a Ruger pistol in a black ankle holster. The weapon had a bullet in the chamber and seven rounds in the magazine. Agent One continued searching the vehicle for any other weapon or contraband and found a second weapon, a 9mm HIPOINT pistol beneath the passenger's front seat. There

was also an empty holster in the driver's door pocket. All subjects were transported to the Lordsburg Border Patrol Station for further investigation. Both subjects, CRESPO and CASTILLO were placed under arrest for transporting illegal aliens. Upon arrival at the Lordsburg Station, all subjects were read their Miranda rights by using government form I-214. All subjects signed form I-214 acknowledging that they understood their rights.

ADDENDEM:

On June 9, 2019 at approximately 6:00 p.m., Border Patrol Agent Three was at the Lordsburg, New Mexico Border Patrol Station conducting an inventory search on a Volkswagen Atlas. This vehicle was part of a smuggling scheme. One of the items inside the vehicle was a Marlboro cigarette pack that Agent Three found in the center console of the vehicle. At 6:15 p.m., he removed the remaining cigarettes from the package and discovered a white, powdery substance wrapped in plastic in the bottom of the cigarette pack. Agent Three took the powder to Supervisory Border Patrol Agent Three and they conducted a test using Narco Test Pouch 23. The white, powdery substance tested positive for the characteristics of methamphetamine. The initial weight of the substance was 1.1 grams. The test used 0.1 grams and the final shelf weight of the substance is 1.0 grams. The substance will be stored in the Lordsburg temporary storage vault until turned over to state or local authorities.

Principal:

On June 09, 2019 at approximately 09:16 p.m., I, Border Patrol Agent (BPA) Four, of the Lordsburg, New Mexico Field Intelligence Unit, in conjunction with BPA Five, Homeland Security Investigators (HSI) Special Agent (SA) One and HSI SA Two conducted a post Miranda custodial interview with CRESPO, Hector as a subject in the case of LOB1906000018. This interview was conducted in the English Language. Crespo was read his Administrative Rights via government ICE Form 73-025 in the English Language by HSI SA One and witnessed by HSI SA Two. The statement of rights was provided to CRESPO who waived his right and was willing to provide a statement and willing to answer questions without the presence of an attorney. The following is a written synopsis of the sworn statement made by CRESPO at the Lordsburg Border Patrol Station in Lordsburg, New Mexico.

CRESPO stated that he left his home in Las Cruces and was trying to make his way to Palomas, Mexico to find a brothel to party for a few days. CRESPO admitted that he had previously been to Columbus in May. CRESPO was then questioned on to whether he had recently been pulled over on New Mexico Highway 81 on June 05, 2019 and stated during this encounter he mentioned that he was in fact lost and he was trying to get cell phone reception. CRESPO then admitted that he had made arrangements to pick up five illegal aliens on New Mexico Highway 81. CRESPO stated that he had no information regards to who he was picking up but stated that he was told to turn around at the 7 mile marker on New Mexico Highway 81. CRESPO stated that he saw subjects come out of the desert area and made their way to the vehicle. CRESPO stated that this was the second time that he made an attempt to pick up illegal aliens, the first time was 4 days ago and stated that he didn't pick up anyone on that day because of the Border Patrol in the area that they would not be picking up. CRESPO stated that he was going to get paid $1000 for all five subjects after getting them dropped off in Deming, New Mexico. This interview concluded on June 9, 2019, at approximately 09:44 p.m. at the Lordsburg Border Patrol Station.

Material Witness 1:

On June 9, 2019 at 8:00 p.m. I, Border Patrol Agent (BPA) Five and BPA Four, of the Lordsburg, New Mexico, Border Patrol Station's Field Intelligence Unit (FIA), conducted a post Miranda custodial interview with Material Witness as a subject in the case of LOB1906000018. This interview was conducted in the Spanish language. Material Witness was advised of their Miranda rights. Material Witness stated he understood this right and he was willing to answer questions without the presence of an attorney. The following is a written synopsis of the sworn statement taken, made by Material Witness at the Lordsburg Border Patrol Station in Lordsburg, New Mexico.

Material Witness stated he made arrangements over the phone. Material Witness provided phone number 6361313827 labeled as DON TRINI. Material Witness stated Trini instructed them to go to Casas Grandes, Chihuahua, Mexico, in order to help them get smuggled into the United States. When they arrived to Casas Grandes they were picked up and driven around town by a man that did not provide his name or a nickname. Material Witness stated they paid the man $10,000 pesos and that was to cover the smuggling fee. Material Witness stated they crossed into the United Stated by jumping a barbed wire fence. Material Witness stated they walked about five hours till they got to a paved road. Material Witness stated a total of six Mexicans including the guide crossed into the United States. Material Witness stated they waited by the road for about 30 minutes till they were picked up. Material Witness stated a Car/Minivan grey in color passed them, then shortly turned around to pick them up. Material Witness stated the vehicle stopped on the side of the road and they all got in. Material Witness described the driver as male, tan, skinny, wearing grey sweat pants, and red shoes. Material Witness described the passenger as also a male wearing shorts, and tennis. Material Witness said they drove for about an hour till they were pulled over by immigration. Material Witness stated they were told by the smugglers that the drivers were going to take the group to Albuquerque, NM. If they arrived to Albuquerque, they were to pay an additional $6,000 dollars more for being smuggled. Material Witness stated they were going to Hobbs, NM to work with a friend.

Material Witness 2

On June 9, 2019 at 8:00 p.m. I, Border Patrol Agent (BPA) Five and BPA Four, of the Lordsburg, New Mexico, Border Patrol Station's Field Intelligence Unit (FIA), conducted a post Miranda custodial interview with Material Witness as a

subject in the case of LOB1906000018. This interview was conducted in the Spanish language. Material Witness was advised of his Miranda rights. Material Witness stated he understood this right and he was willing to answer questions without the presence of an attorney. The following is a written synopsis of the sworn statement taken, made by Material Witness at the Lordsburg Border Patrol Station in Lordsburg, New Mexico.

Material Witness stated he made arrangements with a man that everyone called EL PATRON over the phone. Material Witness stated he was instructed to go to Casas Grandes, Chihuahua, Mexico. In Casas Grandes, Material Witness stated he paid $10,000 pesos. Material Witness stated that money was the smuggling fee and for assistance with transportation to the border. Material Witness stated once they bought food and water, they were picked up and taken to the border. Material Witness stated they crossed a barbed wire fence that had metal pipes, holding up the fence. Material Witness stated they were guided by a coyote to the paved road. Material Witness stated the walk from the border to the highway was about five hours. Material Witness stated once they arrived to the road they waited about 20 minutes till they were picked up. Material Witness stated the grey 4 door vehicle drove south then turned around shortly. Material Witness stated the guided told the group that was the pickup car and to start walking towards the road. Material Witness stated they started walking then the vehicle stopped close by them and they all got in the vehicle. Material Witness stated they drove for about one hour until they were stopped by immigration. Material Witness stated he noticed the driver pass a pistol to the passenger, then the passenger put the gun down. Material Witness stated the arrangements were for the drivers to take them to Albuquerque, NM and from there they were supposed to be free to go were ever they wanted. Material Witness stated he was going to Hobbs, NM to work with his friend. Material Witness stated apart from what they paid in Mexico, he had to pay an additional $3,000 dollars to the driver and another $3,000 dollars to another person. Then that person was supposed to send it back to Mexico to EL PATRON.

**Continuation of Statutory Language:**

_____
Signature of Judicial Officer
KEVIN R. SWEAZEA
U.S. MAGISTRATE JUDGE

_____
Signature of Complainant
Hayes, Wendell
Filing Agent