# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                                         No: 2:19-cr-03229-RB

**HECTOR CRESPO JR.**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

A Border Patrol agent pulled over Defendant Hector Crespo along New Mexico Highway 146 after noticing that his rental SUV was filled with adult males, driving northbound in a remote area near the Mexican border. Reasonably suspicious that the vehicle was smuggling illegal immigrants, the agent quickly ascertained at the stop that the passengers were not United States citizens and proceeded to arrest Crespo. He was subsequently charged with Conspiracy to Transport Illegal Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). The totality of the factual circumstances weighs in favor of the agent having reasonable suspicion to stop Crespo's vehicle. Therefore, the Court will deny his Motion to Suppress Evidence.

**I.**     **Background**

At a morning briefing on June 9, 2019, the Lordsburg Border Patrol was informed of an uptick of illegal border crossings in the area. Later that day, Agent Eric McCaffrey heard on his radio, that Border Patrol was tracking a group of illegal immigrants east of Hatchita, NM.[1] He then parked along Highway 146 until he noticed a crowded SUV drive past. (Doc. 1 (Compl.) at

---

[1] The Border Patrol agent who stopped Crespo discussed this briefing at a hearing for this motion on November 25, 2019. At the time of this Opinion, the transcript has not been filed.

1

1.) The Agent proceeded to follow the SUV for several miles. (*Id.* at 1–2.) In addition to the driver and passenger, the agent observed "what appeared to be multiple adults in the back seat and the third row seat." (*Id.* at 2.) The crowded SUV seemed unusual to the agent, considering the lack of tourist attractions in the Lordsburg area. (*Id.*) In addition, the vehicle had an out-of-state license plate, and the driver repeatedly looked in his rearview mirror while the agent was nearby. (*Id.*)

While continuing to watch the vehicle, the agent called dispatch to check the license plate. (*Id.*) It was owned by PV Holding Corp., a rental car company. (*Id.*) Under the circumstances, the agent pulled the vehicle over. (*Id.*) Defendant Crespo was driving, and his associate Joseph Castillo was in the passenger seat. (*Id.*) The passengers in the back did not speak English and required translation. (*Id.*) They claimed that they were heading to Deming, NM, having spent time in Mexico at a brothel. (*Id.*) The officer, however, understood this story to be false because the vehicle record check he had just completed indicated that it had not crossed the border in the last 72 hours. (*Id.*)

Suspecting smuggling, the agent separated the passengers from the vehicle and performed an inspection. (*Id.*) Unable to present proper identification, the passengers in the back of the SUV were revealed to be Mexican nationals. (*Id.*) During the search, Castillo admitted to the officer that there was a gun in his backpack, and the agent found a second firearm during the search. (*Id.*) Additionally, agents who later arrived on the scene found a Marlboro cigarette pack with powder inside; testing revealed that it was approximately one gram of methamphetamine. (*Id.* at 3.)

Defendant Crespo and Castillo were then arrested. (*Id.*) After receiving his Miranda warning, Crespo told police officers that he planned to pick up the passengers in the desert and drive them to Albuquerque, NM. (*Id.*) Crespo was charged with Conspiracy to Transport Illegal

Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). He then filed this Motion to Suppress Evidence related to the stop. (Doc. 33.)

## II. Legal Standard

The defendant bears the burden of establishing that the stop or seizure implicates the Fourth Amendment. *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017); *United States v. Long,* 176 F.3d 1304, 1307 (10th Cir.1999). Stopping a vehicle is an example of a seizure. *United States v. Mendenhall*, 446 U.S. 544, 553–54 (1980). If the defendant sufficiently meets this standard and the Fourth Amendment is implicated, the burden shifts to the government. If the seizure rises to the level of a temporary investigative detention, the government must show reasonable suspicion of criminal activity. *See United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996) (quoting *United States v. Davis*, 94 F.3d 1465, 1467–68 (10th Cir. 1996)). Conversely, if there was an arrest, probable cause of criminal activity is required. *See id.*

## III. The Border Patrol Agent had Reasonable Suspicion to Stop Crespo's Vehicle.

The Supreme Court of the United States has made clear that Border Patrol agents may not enforce traffic laws—that is, use traffic laws as pretext for stopping vehicles. *United States v. Brignoni-Ponce*, 422 U.S. 873, 883 n.8 (1975). Yet Border Patrol may briefly detain individuals when the agents have reasonable suspicion of criminal activity or immigration violations. *Id.* at 884. In determining whether reasonable suspicion exists in a border area, officers consider several factors:

> (1) [the] characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border; (3) the usual patterns of traffic on the particular road; (4) the previous experience of the agent with alien traffic; (5) information about recent illegal border crossings in the area; (6) the driver's behavior, including any obvious attempts to evade officers; (7) aspects of the vehicle, such as a station wagon with concealed compartments; and (8) the appearance that the vehicle is heavily loaded.

*United States v. Monsisvais*, 907 F.2d 987, 990 (10th Cir. 1990) (quoting *Brignoni-Ponce*, 422 U.S. at 884–85); *see also United States v. Cheromiah*, 455 F.3d 1216, 1221 (10th Cir. 2006) (applying this test). Courts will not review each factor in a vacuum, but rather consider the "totality of the circumstances." *See Id.* at 1221. "In all situations the officer is entitled to assess the facts in light of his experience in detecting illegal entry and smuggling." *Brignoni-Ponce*, 422 U.S. at 885 (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Defendant argues that "[t]he agent had no legitimate reason for stopping Defendant on Highway 146." (Doc. 33 at 4.) The officer, even before the stop, determined that "the vehicle was not stolen and Defendant had no outstanding warrants." (*Id.*) And "[b]ecause at the time of the stop there was no reasonable suspicion that Defendant's vehicle contained undocumented immigrants, the continued detention for the purpose of investigating smuggling was illegal." (*Id.* (citation omitted).) In sum, Crespo states that no evidence existed "at the initial stop sufficient to find that Defendant has committed or was committing an offense." (*Id.* at 5.) The Government, however, argues that the totality of the circumstances falls within the scope of the eight-prong test under *Brignoni-Ponce*. (Doc. 39 at 5–12.)

    **a. Area Characteristics**

The area where the stop occurred is "well known for extremely high rates of human smuggling because of its remoteness, terrain, and proximity to the border." (Doc. 39 at 6.) The stop occurred in a remote part of New Mexico, not close to any major cities or tourist attractions. (*Id.*) Hachita, NM is the closest town, and it has fewer than 100 residents.[2] Therefore, "smugglers attempting to avoid Border Patrol's detection frequent this road." (*Id.*) While this landscape

---

[2] Figure according to the 2010 U.S. Census.

reflects much of the Southwest United States, Border Patrol viewed Highway 146 as a frequent smuggling route. (Compl. at 2.)

### b. Proximity to Border

The agent located the suspect vehicle "13 miles from the United States/Mexico Border, as the crow flies," (Doc. 39 at 7), which is within the approximately 50-mile range courts hold leads to reasonable suspicion, *see, e.g.*, *United States v. Lopez-Martinez*, 25 F.3d 1481, 1486 (10th Cir. 1994).

### c. Traffic Patterns

The government also contends that traffic is particularly light on Highway 146, given that there are no nearby towns or tourist attractions. (Doc. 39 at 7.) Therefore, few cars travel along the road, and even fewer vehicles travel northbound, having not crossed the Mexico-United States border. As a result, an SUV filled with male passengers stood out to the Border Patrol agent as unusual.

### d. Previous Experience of Agents

The agent who stopped Crespo has been "stationed to cover the Lordsburg [area] since January 2018 . . . ." (*Id.*) Though the agent is relatively new to the area, he underwent months of training alongside more experienced Border Patrol agents. And in that time, he "encountered human smugglers smuggling illegal aliens through this area on numerous occasions." (*Id.*) The agent also has learned from "experience that this is a highly trafficked area by those making illegal entry into the United States and for the human smugglers transporting the illegal aliens, given that the desolate area allows illegal aliens to cross the border and be picked up along the highway by smugglers without detection." (*Id.* at 8.)

### e. Information about Recent Illegal Border Crossings[3]

Prior to the agent's shift, he received a briefing on recent border crossing trends in the area. In that session, he learned of an uptick in crossings in the Lordsburg area. Specifically, previous border crossings were concentrated in mountainous areas more difficult for Border Patrol agents to monitor and traverse. But with the influx of migrants from Central America, rural flatland areas have seen increased crossing rates. As a result, the agent was on alert for unusual activity in the area on June 9. Moreover, Agent McCaffrey heard a radio report later that day about agents tracking a group of illegal immigrants nearby, which is why he parked along Highway 146 to potentially intercept them as they drove north.

### f. Driver's Behavior

The agent "observed Crespo repeatedly looking into his left and right rearview mirrors. [The agent] knows, based on his training and experience, that smugglers will often repeatedly look in their rearview mirrors in an attempt to see if law enforcement is still following them." (*Id.*) In and of itself, this factor would unlikely move the dial in favor of reasonable suspicion because most individuals are likely to act nervously in the presence of law enforcement. But when considered alongside the other seven factors, this behavior adds to the weight of evidence against Crespo.

### g. Aspects of the Vehicle

Another mark of smugglers is out of state or rental vehicles. Often, when individuals are engaged in smuggling individuals or contraband across the border, they use rental vehicles to avoid their personal vehicles being impounded. (*Id.*) While the Agent was trailing Crespo, he ran a 72-

---

[3] Again, this section is the result of Agent McCaffrey's testimony at the November 25, 2019 hearing.

hour border crossing check, which was negative. Based on recent briefings and trends, the officer understood this fact to weigh in favor of this vehicle engaging in smuggling activity.

### h. Appearance that the Vehicle is Heavily Loaded

Finally, the agent was suspicious to see "seven adult males in a mid-size SUV that has very limited room in the third-row." (*Id.*) While the vehicle was not filled to an extent beyond its capacity, the agent viewed the filled car suspiciously because there are no tourist attractions or towns in the vicinity. Again, based on his experience and recent trends, the agent believed this car to be engaged in illegal activity.

### i. Discussion

These eight steps are not viewed in isolation but rather through a "totality of the circumstances" approach. *Cheromiah*, 455 F.3d at 1221. As such, the government has the better argument. The proximity to the border places an agent on higher alert. Given the remoteness of the area, an agent would likely notice most vehicles that drive past. When a vehicle has out-of-state tags and does not look like a local ranching vehicle, it would stand out as unique to those who know the area. Courts have suggested that within 50 miles of the border, suspicion is heightened, and the arrest took place within that range. The government also contends that Crespo's vehicle was traveling in a secluded area—a common practice among smugglers. The vehicle was also filled with seven male adults. While this fact alone would probably not create enough suspicion to warrant a stop—coupled with the area, driver behavior, and experience of the agent—there are enough facts that present a holistic picture for the officer to infer smuggling. Each of these facts may have reasonable counterpoints—most drivers are wary when law enforcement are nearby or

the vehicle was not filled beyond capacity—but the totality of the circumstances provided the agent justification to stop the vehicle.

IV.     **The Duration and Scope of the Stop**

Any resulting detention from a stop must also be reasonable. *See Shareef*, 100 F.3d at 1500. To meet this standard, the investigatory detention must be reasonably related in scope to the circumstances that justified the stop, *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc), and the stop must last no longer than necessary to complete its purpose, *see Rodriguez v. United* States, 135 S. Ct. 1609, 1614 (2015). In assessing whether a stop lasted too long, a court can examine whether the officer diligently investigated to quickly confirm or dispel his suspicion. *See United States v. Sharpe*, 470 U.S. 675, 686 (1985). Courts, however, should remember that officers are reacting to a developing situation and refrain from "indulg[ing] in unrealistic second-guessing." *See id*.

Here, after the agent stopped the vehicle, he conducted an immigration search and immediately "observed the driver's side passenger wearing soiled camouflage clothing, consistent with what . . . illegal aliens in the area routinely wear when illegally crossing the border . . . ." (Doc. 39 at 10.) The passengers in the back of the vehicle also could not provide identification, nor did they speak English. (*Id.*) Given that the agent confirmed that the vehicle did not cross the border within the last 72 hours, he knew that Crespo's story about visiting Mexico was untrue. (*Id.*) When these evasive answers are paired with the circumstances of the stop, the location, and the undocumented adults in the car, the stop and subsequent investigation appear reasonable. Therefore, "the detention in this case did not last longer than necessary to effectuate the purpose of the stop, which was to investigate possible violations of immigration laws." (*Id.* at 11.) Crespo's primary argument stems from the stop itself, as the subsequent investigation quickly and

reasonably resulted in a finding that the passengers were in the United States illegally. As such, since the stop was reasonable, the eventual detention and arrest were also proper.

## V.     Conclusion

The core of Crespo's argument is that there was not a reasonable basis to stop the vehicle, but he confuses traffic standards with those of a border stop. While the vehicle here violated no apparent traffic laws, given the factual circumstances surrounding the stop, it was reasonable for the Border Patrol agent to stop the vehicle under suspicion of immigration violations. Upon pulling Crespo over, it was almost immediately evident that the agent had interrupted a smuggling operation, which justified the eventual arrests. Therefore, the agent acted with reasonable suspicion in making the stop, so the Motion to Suppress must be denied.

**THEREFORE**,

**IT IS ORDERED** that Defendant Crespo's Motion to Suppress Evidence (Doc. 33) is **DENIED**.

_____
**ROBERT C. BRACK**
**SENIOR U.S. DISTRICT JUDGE**